**Appeal of THE SURVIVING EXECU-**          Docket No. 1337.
**TORS OF THE ESTATE**
**OF JACOB FISH, DE-**
**CEASED.**

Where the stock of a corporation is closely held so that it can not be valued upon the basis of sales in an open market, its value, for estate tax purposes, will be determined upon the basis of the assets underlying the capital stock and the earnings of the corporation.

Small weight is to be attached to comparative statements of the assets, earnings, and stock quotations of a competitor corporation, where their purpose is to show some relationship between book value and market value and where it is claimed that such relationship should be applied in determining the value of the stock of a close corporation.

Upon the evidence, the value of the stock here in question is found to be $125 per share.

Submitted February 24, 1925; decided March 25, 1925.

*William Friedman*, *Esq.*, for the taxpayer.

*L. C. Mitchell*, *Esq.*, for the Commissioner.

Before JAMES, STERNHAGEN, TRAMMELL, and TRUSSELL.

### FINDINGS OF FACT.

The taxpayers are the surviving executors, qualified and acting under the last will and testament of Jacob Fish, deceased, of Chicago, Ill., who died August 24, 1922.

Jacob Fish, at his death, owned 4,040 shares, of a total of 20,000 shares issued and outstanding, of the capital stock of the L. Fish Furniture Co., a corporation with its principal office located at Chicago, Ill.

At the date of decedent's death, the stock of the L. Fish Furniture Co. was entirely owned by decedent and his immediate relatives.

The net sales, the net income less taxes, and the per cent of income to sales of the L. Fish Furniture Co. for the fiscal years ended January 31, 1918, to January 31, 1921, inclusive, and for the fiscal period of 11 months ended December 31, 1921, and the calendar year 1922, are as follows:

|  | Net sales. | Income, less taxes. | Per cent to sales. |
|---|---|---|---|
| Jan. 31, 1918 | $1, 188, 440. 46 | $43, 084. 18 | 3. 63 |
| Jan. 31, 1919 | 1, 222, 061. 63 | 77, 767. 17 | 6. 36 |
| Jan. 31, 1920 | 1, 828, 108. 64 | 238, 637. 27 | 13. 05 |
| Jan. 31, 1921 | 2, 690, 319. 62 | 506, 210. 50 | 18. 81 |
| Dec. 31, 1921 | 2, 695, 525. 39 | 350, 787. 91 | 13. 01 |
| Dec. 31, 1922 | 3, 205, 249. 51 | 348, 760. 67 | 10. 89 |
| Average | 2, 138, 284. 21 | 260, 874. 62 | 12. 2 |

The balance sheet of the corporation as shown by its books as of January 31, 1918, to January 31, 1921, inclusive, and December 31, 1921, is as follows:

|  | Jan. 31, 1918. | Jan. 31, 1919. | Jan. 31, 1920. | Jan. 31, 1921. | Dec. 31, 1921 |
|---|---|---|---|---|---|
| ASSETS. |  |  |  |  |  |
| Cash | $66, 571. 06 | $100, 085. 19 | $51, 180. 70 | $107, 205. 86 | $54, 400. 79 |
| Accounts receivable: |  |  |  |  |  |
| Trade | 980, 478. 49 | 901, 488. 26 | 1, 125, 143. 44 | 1, 580, 066. 05 | 1, 969, 605. 39 |
| Miscellaneous | 2, 183. 87 | 11, 922. 88 | 13, 967. 17 | 16, 008. 04 |  |
| Merchandise inventory | 300, 399. 56 | 336, 290. 50 | 512, 938. 90 | 304, 625. 53 | 268, 829. 40 |
| Claims |  |  | 5, 687. 50 |  |  |
| Land | 58, 336. 67 | 58, 336. 67 | 58, 336. 67 | 57, 836. 67 | 57, 336. 67 |
| Buildings | 159, 908. 40 | 178, 947. 83 | 179, 146. 10 | 173, 112. 04 | 167, 773. 04 |
| Stock and bond investments | 162, 942. 22 | 204, 626. 04 | 270, 120. 02 | 291, 259. 26 | 414, 508. 04 |
| Fixtures | 24, 241. 56 | 21, 294. 34 | 16, 608. 31 | 14, 465. 10 | 11, 122. 95 |
| Auto trucks | 13,'408. 97 | 15, 345. 39 | 12, 340. 94 | 8, 663. 68 | 7, 954. 21 |
| Horses and wagons | 1, 545. 68 | 706. 09 | 314. 29 | 150. 00 |  |
| Machinery | 1, 522. 07 | 761. 04 | 507. 36 | 250. 00 |  |
| Cuts and electros | 11, 403. 46 | 6, 455. 37 | 3, 581. 27 | 11, 406. 80 | 4, 561. 45 |
| Personal accounts | 4, 773. 22 | 5, 175. 62 | 6, 198. 62 | 82, 006. 93 | 3, 356. 20 |
| Insurance claim | 22, 000. 00 | 22, 000. 00 |  |  |  |
| Perry Auto Manifold Co |  |  | 6, 500. 00 | 5, 473. 82 |  |
| Perry Manifold Co |  |  | 11, 922. 88 | 11, 898. 48 |  |
| Star Stamp Co |  |  |  |  | 31. 60 |
| Reserve fund | 16, 744. 12 |  |  |  |  |
|  | 1, 826, 459. 35 | 1, 863, 535. 22 | 2, 272, 494. 17 | 2, 664, 428. 26 | 2; 959, 479. 74 |

| | Jan. 31, 1918. | Jan. 31, 1919, | Jan. 31, 1920. | Jan. 31, 1921. | Dec. 31, 1921. |
|---|---|---|---|---|---|
| **LIABILITIES.** | | | | | |
| Notes payable | $50,000.00 | | $85,000.00 | | $7,000.00 |
| Accounts payable | 63,885.49 | $80,561.50 | 197,292.64 | $135,108.10 | 266,511.08 |
| Payable to officers | 3,170.00 | 9,961.84 | 9,674.68 | 3,100.00 | 3,100.00 |
| A. Fish | 24,412.94 | 24,412.94 | 24,012.94 | 24,012.94 | 24,012.94 |
| Personal accounts | 3,100.00 | | 24,961.45 | 22,943.30 | 5,205.32 |
| Sundry | | | | 17.12 | 41.75 |
| Reserve: | | | | | |
|   United States income tax | | 12,671.59 | 22,391.97 | 22,387.14 | |
|   Bad debts | 116,595.51 | 102,908.90 | 115,383.84 | 165,608.82 | 195,648.89 |
| Capital stock | 100,000.00 | 100,000.00 | 100,000.00 | 100,000.00 | 2,000,000.00 |
| Surplus | 1,465,295.41 | 1,533,018.45 | 1,695,776.65 | 2,191,250.48 | 457,959.76 |
| | 1,826,459.35 | 1,863,535.22 | 2,272,494.17 | 2,664,428.26 | 2,953,479.74 |

The balance sheet of the corporation as of December 31, 1922, as shown by the books, is as follows:

| ASSETS. | | LIABILITIES. | |
|---|---|---|---|
| Cash | $102,190.10 | Accounts payable | $202,091.43 |
| Accounts receivable | 2,332,247.04 | Payable to officers | 3,100.00 |
| Merchandise inventory | 310,901.78 | Star Stamp Co | 138,839.62 |
| Land and buildings | 409,931.06 | H. Fish | 24,012.94 |
| Stock and bond investments | 249,374.56 | Personal account | 12,581.10 |
| Fixtures | 9,412.60 | Reserve: | |
| Auto trucks | 10,450.00 |   Bad debts | 233,224.70 |
| Personal accounts | 25,866.69 |   Wabash Building | 23,517.40 |
| Master Parlor Furniture Co | 5,357.98 | Capital stock | 2,000,000.00 |
| | | Surplus | 818,364.62 |
| | 3,455,731.81 | | 3,455,731.81 |

The real estate shown in the foregoing balance sheet as of December 31, 1921, as land $57,336.67 and buildings $167,773.04, had a fair value at the date of decedent's death of $510,000.

The L. Fish Furniture Co., throughout the period covered by the foregoing statements of income and balance sheets, was engaged in the business of selling furniture on the installment plan in the city of Chicago. The foregoing statements were prepared upon the accrual basis of accounting.

The Hartman Corporation is a corporation doing business in the city of Chicago, the capital stock of which is listed upon the New York Stock Exchange, and the income and balance sheets of which are reported in Standard Corporation Records dealing with listed stocks, and in particular are reported by the Standard Statistics Co., Inc., of New York City. Evidence as to balance-sheet assets, income and stock prices was introduced but is not here set forth at length, as it is regarded as being not material to the decision.

The Federal Trade Commission issued a report entitled "House Furnishings Industries—Summary of Report of the Federal Trade Commission on Household Furniture," under date of January 17, 1923, and stated therein, on page 6, the significant features of the installment furniture business, as follows:

In general the primarily installment stores had higher operating expenses, higher mark-ups, less frequent turnover, and higher profits on the investment than stores doing primarily a cash business. They were more profitable to their owners but more expensive to the buying public. Installment prices, it

is estimated, averaged about 16 per cent higher than cash prices. Primarily installment stores were making 23.4 per cent in 1920 and 9.2 per cent in 1921, while primarily cash stores were making 17.8 per cent in 1920 and 5.5 per cent in 1921. However, the installment store in giving its customers long-time credit renders a different kind of service.

### DECISION.

The deficiency should be computed in accordance with the following opinion. Final decision will be settled on consent or on 14 days' notice in accordance with Rule 50.

### OPINION.

JAMES: The taxpayer, in appealing from the determination of the Commissioner, claims that the value fixed upon the stock is in error in the following particulars and for the reasons:

1. That the Commissioner gave consideration to the prospects of the business and to earnings subsequent to the death of the decedent;

2. That no special consideration was given by the Commissioner to the alleged fact that the business of the L. Fish Furniture Co. was extra-hazardous, particularly with reference to the collection of accounts; and

3. That the Commissioner erred in not considering earnings for a full five-year period prior to the death of the decedent, in determining the value of the stock in question as of the date of his death.

The stock of the corporation here in question was closely held, and we therefore are not able to value it upon the basis of sales in an open market. We place our valuation upon the basis of the assets underlying the capital stock and the earnings of the corporation. The taxpayer and the Commissioner have also submitted, as having evidentiary value, the assets, earnings, and stock quotations of a competitor of the L. Fish Furniture Co., as indicating the relations between book value and market value of stock.

An examination of the statements covering The Hartman Corporation in comparison with those of the L. Fish Furniture Co., introduced in evidence, is conclusive of the small amount of weight to be attached to comparative statements of this character, particularly when the purpose is to show some relationship between book values and market values of stock, and it is attempted to be argued that the relationship presumably existing in the one should be applied to the other.

An examination of the stock quotations of The Hartman Corporation shows a range from the lowest quotation in 1917 of 31⅞ to the highest in 1920 of 108. The range in 1922, when the decedent died, was from 81 to 103. The book value of assets per share, excluding good will, ranged in The Hartman Corporation from 1917 to 1922, from $73.90 to $100.58. In 1917, 1919, 1920, and 1922, the high sales prices were in excess of the book value as of the close of those years. From this, it might be argued that stock in the L. Fish Furniture Co. should be valued at a percentage over the book value measured by the excess of the high sales prices of The Hartman Corporation stock, over book value in the respective years. It is argued by the taxpayer that the book value should be discounted on the basis of the low market prices compared

with book values, or perhaps upon some basis of averages. Such computations are too speculative to form the basis for the levying and collecting of taxes.

Passing to the more material evidence in the appeal, it appears from the balance sheets submitted that the net worth of the corporation on December 31, 1921, preceding the death of the decedent, after adjustment on account of the value of real estate, was $2,742,850.05, being $137.14 per share. It further appears that the total net earnings for 71 months, to and including December, 1922, were $1,565,-247.70, after deduction of taxes, or at the rate of $264,587.66 per year. It further appears that there were included in the assets of the corporation as of December 31, 1921, real estate of the value of $510,000 and securities of the value of $414,508.04. If a 5 per cent return were allowed upon these assets, amounting to $46,225.40, and the average earnings per year based upon the 71 months above mentioned, less the above return upon real estate and securities, or $218,-362.26 were capitalized at 15 per cent, the value of the going business, real estate, and securities would be as follows:

1. The average net earnings_____ $264,587.66
2. Five per cent return on real estate and securities_____ 46,225.40
3. The balance to be capitalized at 15 per cent_____ 218,362.26
4. The above figure capitalized at 15 per cent_____ 1,455,748.40
5. The value of real estate and securities to be added to the capitalized value of the business_____ 924,508.04
6. The total value of the assets and going business as of Dec. 31, 1921, based upon the earnings for 71 months_____ 2,380,256.44
   or a value of $119.01 per share.

If the above method were applied solely to the year 1921, during which year the corporation earned in 11 months $350,787.91, the earnings for the year, by adding one-eleventh, would be $382,677.72. Taking the above return upon real estate and securities at 5 per cent, the amount available is capitalized at 15 per cent, or $336,-452.32. The capitalized value of the going business, less real estate and securities, upon this basis is $2,243,015.47, and adding the real estate and securities to the total value of the corporation gives the sum of $3,167,523.51, or $158.38 per share.

The report of the examining revenue agent was introduced in part in evidence by the taxpayer and in whole by the Commissioner. It appears from that report that the agent made a definite recommendation as to the value to be placed upon the stock here in question, after a thorough and careful examination of all the elements of value on the ground. His recommendation is summarized as follows:

The percentage of net earnings to invested capital, over a period of six years, was 13.3; which capitalized at 10%, would justify a valuation of $133 per share. A capitalization of net earnings for the four years and eleven months prior to the year of decedent's death would show a somewhat higher value. It occurs to me that a liberal concession should be made to the fact that the stock is so closely held, and to the large size of the block under consideration; which facts would surely have a depressing effect upon the value obtainable from a prospective purchaser. Considering all the facts, I am recommending a valuation of $125 per share.

It is the opinion of the Board that the appraisal of the revenue agent, above recommended, is fair and conservative and should be adopted. The Board, therefore, finds that the value of the 4,040 shares of stock of the L. Fish Furniture Co. owned by decedent at

the date of his death was $125 per share, or a total of $505,000, which value should be substituted for the value heretofore determined by the Commissioner, and the estate tax due from the estate of Jacob Fish recomputed accordingly.